IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| SHELLY D. PARHAM, Individually, and VICTOR HINES, III, as Independent Administrator of, and on behalf of, the Estate of Marcus Johnson, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BURKBURNETT, TEXAS, and DANIEL C. ELBAUM, <br><br> Defendants. | Civil Action No. 7:17-cv-00036-M-BP |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant Elbaum's 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 16) and Brief in Support (ECF No. 17), filed April 11, 2017; Plaintiffs' Response to Defendant Elbaum's 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 26), filed May 2, 2017; and Defendant Elbaum's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss (ECF No. 28), filed May 15, 2017.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned RECOMMENDS that Chief United States District Judge Barbara M.G. Lynn DENY Defendant Elbaum's Motion to Dismiss (ECF No. 16).

**I.   BACKGROUND**

Plaintiffs Shelly D. Parham, individually, and Victor Hines, III, as independent administrator of and on behalf of the Estate of Marcus Johnson (collectively, "Plaintiffs"), brought suit against Defendants Daniel C. Elbaum ("Elbaum") and the City of Burkburnett, Texas ("City

of Burkburnett") under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. ECF No. 14. Plaintiffs' claims are based on the suicide death of Marcus Johnson ("Johnson") at the City of Burkburnett jail, located at the City of Burkburnett Police Station, on March 10, 2016. *Id.* at 5-6. The facts, as recounted in the 68 pages of Plaintiffs' First Amended Complaint and taken as true and viewed in the light most favorable to Plaintiffs at this stage of the litigation, as required by *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992), are as follows.

On March 10, 2016, police officers were dispatched to a mobile home in Burkburnett to respond to a caller's request for police assistance with an unidentified dispute. ECF No. 14 at 5. Upon arrival, officers requested identification from three persons sitting in a car parked near the mobile home, including Johnson. *Id.* The officers believed that Johnson produced a fake State of Texas identification card, arrested him, and transported him to the City of Burkburnett jail for a later-identified violation of Texas Penal Code § 32.21(e)(2). *Id.* Elbaum was one of the arresting officers. *Id.* Elbaum arrived at the jail with Johnson and initiated the book-in process, which included Elbaum asking Johnson required questions regarding any prior suicide attempts or mental disorders, and determining whether Johnson was currently suicidal, homicidal, or delusional. *Id.* at 6-7. Johnson informed Elbaum that he had attempted to commit suicide approximately three times, with the most recent attempt being three weeks prior to his arrest, and was hospitalized at the state hospital because he had tried to cut himself. *Id.* at 7. Johnson showed Elbaum a scar on his arm from a suicide attempt and further informed Elbaum that he had mental health issues including depression, anger management, and bipolar disorder. *Id.* at 8. Elbaum included notations of Johnson's prior suicide attempts, mental disorders, and asthma on the Booking Information Form. *Id.*

Fifteen minutes after beginning the book-in process, Elbaum allowed Johnson to make a telephone call to his mother, Shelly Parham ("Parham"). *Id.* at 10. During this call, Johnson informed Elbaum that he did not have his medication with him. *Id.* After Johnson ended the call, Elbaum escorted him to a jail cell. *Id.* at 11. Thirty minutes later, Parham telephoned the police station and informed the dispatcher that Johnson required his medications and asked to speak with an officer. *Id.* at 12. Elbaum returned Parham's call and discussed with her Johnson's criminal charges, need for medication, and impending transfer to the Wichita County Jail. *Id.* at 14. Somewhat later, Johnson requested help from his jail cell, and Officer McDonald went to the cell. *Id.* Johnson asked Officer McDonald what charge was being made against him. *Id.* Officer McDonald responded that Johnson had already been told that information by the arresting officer. *Id.* Approximately two hours after this interaction, and marking the first time anyone had checked on Johnson since the interaction, Officer McDonald returned to Johnson's cell and found him deceased from an apparent suicide. *Id.* at 19.

The City of Burkburnett Police Department conducted an internal investigation regarding Johnson's death. *Id.* at 25. As a result, Elbaum was suspended for one day for failing to monitor Johnson in accordance with Burkburnett Police Department Operating Guidelines, McDonald was reprimanded for the same violation of the Operating Guidelines, and Police Sergeant Leonard, as shift supervisor that night, received a "letter of counciling" regarding various violations of the Operating Guidelines. *Id.* at 26-29.

Plaintiffs filed their Original Petition in the 89th District Court of Wichita County, Texas. ECF Nos. 1, 1-2. Elbaum initially filed a motion to dismiss after the action was removed from state court. ECF No. 7. Thereafter, Plaintiffs filed an amended complaint, and the Court denied Elbaum's motion as moot. ECF Nos. 14, 15, 22. Elbaum then filed the instant Motion to Dismiss

Plaintiffs' Amended Complaint, asserting that Plaintiffs failed to adequately plead a substantive due process claim under 42 U.S.C. § 1983, that Elbaum is entitled to qualified immunity for his actions as a police officer, and that Plaintiffs failed to join necessary parties to their wrongful death claim under Texas law. ECF Nos. 16, 17. Plaintiffs responded to Elbaum's Motion, and Elbaum subsequently replied. ECF Nos. 26, 28.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

With particular respect to motions to dismiss section 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because the Fifth Circuit's heightened pleading standard requires "claims of specific conduct and actions

giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus, the issue now before the Court "is not whether [ ] plaintiff[s] will ultimately prevail but whether [they are] entitled to offer evidence to support [their] claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

### B. 42 U.S.C. § 1983

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied,* ___ U.S. ___, 134 S. Ct. 1935 (2014). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

With particular respect to a section 1983 action brought by a pretrial detainee based on episodic acts or omissions in violation of the detainee's Fourteenth Amendment rights, a plaintiff must show "subjective deliberative indifference by the defendants." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc) (*Hare II*)). This showing requires a demonstration "that the official knew of and disregarded a substantial risk of serious harm." *Id.* at 420 (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Instead, "[t]o reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson*, 848 F.3d at 420 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

5

## C. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.' *Id.*

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court "will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate[.]'" *Whitley*, 726 F.3d at 638 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "To determine whether an official is entitled to qualified immunity, [the Court] must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of

clearly established law at the time of the incident." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III. ANALYSIS

### A. Fourteenth Amendment Substantive Due Process Claims

Plaintiffs allege that Elbaum violated Johnson's rights to reasonable medical care, to protection from harm, and to be free from punishment prior to an adjudication of guilt, based on the episodic acts or omissions of Elbaum. ECF No. 14 at 37-51. In support of these claims, Plaintiffs assert that Elbaum knew of and ignored Johnson's suicidal tendencies and serious medical needs, knew of Johnson's need to take medication for his mental health issues, knew that Johnson did not have his medication at the jail, and failed to monitor Johnson or remove items from his cell that are commonly used by inmates to commit suicide. *Id.*

The Due Process Clause of the Fourteenth Amendment requires that states provide pretrial detainees with basic human needs during the duration of their confinement, including medical care and protection from harm. *Hare II*, 74 F.3d at 645. The right to protection from harm includes the right to protection from a detainee's own known suicidal tendencies. *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). Therefore, Plaintiffs must plead that (1) Elbaum had subjective knowledge of a substantial risk that Johnson might commit suicide and (2) responded

7

to that risk with deliberate indifference. *Hare II*, 74 F.3d at 650. Deliberate indifference requires that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Thompson*, 245 F.3d at 458-59 (citing *Hare II*, 74 F.3d at 643, 649-50). Although the Plaintiffs urge this Court to apply the objective unreasonableness standard adopted in *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015), Fifth Circuit precedent dictates that the Plaintiffs must allege subjective deliberate indifference by Elbaum on the facts of this case. *E.g.*, *Alderson*, 848 F.3d at 419; *Hare II*, 74 F.3d at 643 (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). An officer's alleged negligence or gross negligence in response to a substantial risk of serious harm is insufficient to support a showing of deliberate indifference. *Hyatt*, 843 F.3d at 177-78; *Thompson*, 245 F.3d at 458-59 (citing *Hare II*, 74 F.3d at 645, 649).

On the issue of Elbaum's subjective knowledge of Johnson's suicide risk, Plaintiffs assert that Elbaum, while conducting the book-in process: (1) specifically asked Johnson about his mental health and prior suicide attempts; (2) learned that Johnson had a history of three suicide attempts, with the most recent attempt three weeks prior to his arrest; (3) learned that Johnson had been diagnosed with depression, anger management issues, and bipolar disorder; and (4) was told by Johnson and by Parham that Johnson did not have his medications with him at the jail. ECF No. 14 at 7-8, 10-11. Plaintiffs also allege that Johnson called Parham to inform her that he had been arrested and that Parham called the jail and reiterated to the dispatcher that Johnson required his medications and asked to speak with an officer. *Id.* at 12. Plaintiffs further allege that Elbaum later returned Parham's phone call and discussed with her Johnson's criminal charges for producing a forged identification card, his need for medication for mental health problems, and his

impending transfer to the Wichita County Jail. *Id.* at 14. Plaintiffs' allegations of these facts are specific, direct, non-conclusory, and substantive. Plaintiffs have sufficiently alleged facts which, if true, would establish that Elbaum had subjective knowledge that Johnson posed a substantial risk of suicide if not properly monitored. *Shepard v. Hansford Cty.*, No. 2:14-CV-147-J, 2014 WL 6662082, at *4 (N.D. Tex. Nov. 24, 2014) (*Shepard I*).

With respect to whether Elbaum acted with deliberate indifference, Plaintiffs assert that Elbaum (1) actually knew about Johnson's suicidal tendencies from Johnson's answers to Elbaum's questions during the initial intake process; (2) placed Johnson in an isolated cell without monitoring equipment; (3) failed to remove Johnson's drawstring from his pants and therefore allowed him access to a common item used by inmates to commit suicide; (4) advised Parham that he would apprise the staff at the Wichita County Jail of Johnson's current medical treatment needs upon transferring him; and (5) failed to monitor Johnson for a period of at least two hours, during which time Johnson committed suicide with the drawstring of his pants. ECF No. 14 at 7-19. As with the allegations of subjective knowledge of suicide risk discussed above, these facts, if proven to be true, sufficiently establish that Elbaum acted with deliberate indifference to the substantial risk that Johnson might commit suicide while detained at the City of Burkburnett jail. *See Shepard I*, 2014 WL 6662082, at *5. In particular, Plaintiffs have alleged with specificity that Elbaum (1) was aware of facts from which an inference of substantial risk of serious harm could be drawn— evidenced by his actual knowledge of Johnson's history of suicide attempts and history of mental health problems disclosed during the book-in process; (2) actually drew that inference—evidenced by his assurance to Parham that he would advise the Wichita County Jail of Johnson's current medical treatment needs; and (3) responded in a manner indicating that he subjectively intended that harm occur—evidenced by his failure to check on Johnson for at least two hours or otherwise

9

limit Johnson's access to items with which he could commit suicide in his cell. *See Thompson*, 245 F.3d at 458-59 (citation omitted); *Shepard v. Hansford Cty.*, 110 F. Supp. 3d 696, 711 (N.D. Tex. 2015) (*Shepard II*); *Shepard I*, 2014 WL 6662082, at *5; *Herrin v. Treon*, 459 F. Supp. 2d 525, 538 (N.D. Tex. 2006). Thus, Plaintiffs have sufficiently stated Fourteenth Amendment claims upon which relief can be granted.

### B. Qualified Immunity

As detailed above, Plaintiffs have alleged sufficient facts in support of their contention that Elbaum was subjectively deliberately indifferent to Johnson's constitutional rights under the Fourteenth Amendment. It was clearly established in the Fifth Circuit in March 2016 that "a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights." *Jacobs*, 228 F.3d at 393 (citing *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) (citing *Hare II,* 74 F.3d at 647-48)); *Flores*, 124 F.3d at 738 (citation omitted). By alleging subjective deliberate indifference to Johnson's Fourteenth Amendment rights as a pretrial detainee, Plaintiffs "have cleared the first hurdle" in overcoming Elbaum's qualified immunity defense. *Jacobs*, 228 F.3d at 393.

Accordingly, the undersigned must address the second prong of the qualified immunity inquiry: whether Elbaum's actions were objectively unreasonable in light of clearly established law at the time of Johnson's suicide. *Id.* In order to overcome Elbaum's defense of qualified immunity, Plaintiffs must sufficiently allege that Elbaum's actions "fall[] outside the realm of that which could be characterized as being objectively reasonable in light of the duty to not act with subjective deliberate indifference to a known substantial risk of suicide." *Id.* at 397-98. Plaintiffs have stated sufficient facts to allow the Court to draw the reasonable inference that Elbaum may

10

be liable for the harm alleged and thus defeat the defense of qualified immunity at this stage of the proceedings. As recounted above, Plaintiffs have specifically alleged that Elbaum (1) actually knew about Johnson's suicidal tendencies from Johnson's answers to Elbaum's questions during the initial intake process; (2) placed Johnson in an isolated cell without monitoring equipment; (3) failed to remove Johnson's drawstring from his pants and therefore allowed him access to a common item used by inmates to commit suicide; (4) advised Parham that he would apprise the staff at the Wichita County Jail of Johnson's current medical treatment needs upon transferring him; and (5) failed to monitor Johnson for a period of at least two hours, during which time Johnson committed suicide with the drawstring of his pants. ECF No. 14 at 7-19.

Plaintiffs have sufficiently alleged that no reasonable officer in Elbaum's position could have believed that his or her particular actions of leaving Johnson alone for over two hours without supervision, monitoring, or medication, and with the means to harm himself, were lawful. They have asserted that a reasonable officer would understand that he or she was required to at least ensure that minimally adequate preventative measures or precautions were taken to protect Johnson from his known suicidal tendencies, in light of the officer's duty to not be deliberately indifferent. *See Jacobs*, 228 F.3d at 396-98. The undersigned finds that the Plaintiffs have adequately alleged that Elbaum's "actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (citations omitted). The denial of Elbaum's motion to dismiss on the basis of qualified immunity should be "without prejudice to his ability to bring the same argument on an appropriate motion for summary judgment." *Arenas v. Calhoun*, No. SA-16-CV-01203-XR, 2017 WL 1052618, at *7 (W.D. Tex. Mar. 20, 2017).

### C. Wrongful Death Claims

Finally, Elbaum asserts that Plaintiffs' wrongful death claim should be dismissed for failure to join necessary parties. ECF No. 17 at 8. Plaintiffs do not assert a stand-alone wrongful death claim, but do request all remedies and damages available under Texas' wrongful death and survival statues. *See, e.g.*, ECF No. 14 at 41. Texas law provides that "[i]f none of the individuals entitled to bring a [wrongful death] action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals." Tex. Civ. Prac. & Rem. Code § 71.004(c).

Johnson died on March 10, 2016. ECF No. 14 at 5. Plaintiffs filed this lawsuit on March 3, 2017. ECF No. 1-2. Thus, Victor Hines III, as the independent administrator of the Estate of Marcus Johnson, is entitled to pursue the wrongful death claim. *See Evans v. City of Dallas*, No. 3:16-CV-0561-L, 2017 WL 958607, at *7 (N.D. Tex. Mar. 13, 2017); *Coffey v. Ochiltree Cty.*, No. 2:16-CV-00071-J, 2016 WL 5349792, at *2 (N.D. Tex. Sept. 22, 2016) (collecting cases) ("Any one person who is qualified to bring a wrongful death claim 'may bring the action or one or more of those individuals may bring the action for the benefit of all.'"). Moreover, because the instant lawsuit was filed more than three months after Johnson's death, Hines, as independent administrator, "is the only person entitled to bring and prosecute this wrongful death action[.]" *Morin v. Ford Motor Co.*, No. 3:07-cv-1700-L, 2009 WL 2486027, at *2 (N.D. Tex. 2009) (citing Tex. Civ. Prac. & Rem. Code § 71.004(c)).

### IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Chief United States District Judge Barbara M.G. Lynn DENY Defendant Elbaum's Motion to Dismiss (ECF No. 16).

A copy of this findings, conclusions, and recommendation shall be served on all parties in

the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    Signed June 1, 2017.

                                        Hal R. Ray, Jr.
                                        UNITED STATES MAGISTRATE JUDGE