IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SHELLY D. PARHAM, Individually, and | § | |
| VICTOR HINES, III, as Independent | § | |
| Administrator of, and on behalf of, the | § | |
| Estate of Marcus Johnson, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:17-cv-00036-M-BP |
| | § | |
| CITY OF BURKBURNETT, TEXAS, | § | |
| and DANIEL C. ELBAUM, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants McDonald's and Leonard's 12(b)(6) Motion to Dismiss

Plaintiffs' Second Amended Complaint and Brief in Support (ECF No. 83), filed March 21, 2018,

and Plaintiffs' Response to Defendants' Motion to Dismiss (ECF No. 92), filed April 9, 2018.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the

undersigned **RECOMMENDS** that Chief United States District Judge Barbara M.G. Lynn **DENY**

**in part and GRANT in part** Defendants' Motion to Dismiss (ECF No. 83), and dismiss Plaintiffs'

claims against Defendant Leonard.

## I.    BACKGROUND

This case concerns the suicide death of Marcus Johnson ("Johnson") while he was in

custody at the City of Burkburnett Jail located at the Burkburnett police station. Shelly D. Parham,

individually, and Victor Hines, III, as independent administrator of and on behalf of the Estate of

Marcus Johnson (collectively, "Plaintiffs"), pursue the action against Daniel C. Elbaum

("Elbaum"), Matthew C. McDonald ("McDonald"), Zachary D. Leonard ("Leonard"), and the City

of Burkburnett, Texas ("City of Burkburnett") under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. ECF No. 71 at 2–3. Initially, Plaintiffs filed an Original Petition in the 89th District Court of Wichita County, Texas, which case was removed to this Court. ECF Nos. 1, 1-2. Defendant Elbaum moved to dismiss, Plaintiffs filed an amended complaint, and the Court denied Elbaum's motion as moot. *Id.* Nos. 7, 14, 15, and 22. Elbaum moved to dismiss the amended complaint, and the undersigned entered Findings, Conclusions, and Recommendation recommending denial of the motion, which Chief Judge Lynn accepted. *Id.* Nos. 14, 29, and 30. Plaintiffs filed a second amended complaint adding Defendants McDonald and Leonard as parties, and those defendants now have moved to dismiss for failure to state a claim. *Id.* Nos. 71 and 83.

The facts relevant to the pending motion are as follows. On March 10, 2016, Elbaum arrived at the City of Burkburnett jail with Johnson in custody and initiated the book-in process. Elbaum asked Johnson about any prior suicide attempts or mental disorders to determine whether he was suicidal, homicidal, or delusional at that time. *Id.* No. 71 at 8. Johnson informed Elbaum that he had attempted to commit suicide approximately three times, with the most recent attempt being three weeks prior to his arrest, and was hospitalized at the state hospital because he had tried to cut himself. *Id.* Johnson showed Elbaum a scar on his arm from a suicide attempt and further informed Elbaum that he had mental health issues including depression, anger management, and bipolar disorder. *Id.* at 9. Elbaum included notations of Johnson's prior suicide attempts, mental disorders, and asthma on the Booking Information Form. *Id.*

Shortly after beginning the book-in process, Elbaum allowed Johnson to make a telephone call to his mother, Shelly Parham ("Parham"). *Id.* at 15–16. Plaintiffs allege that during this call, Johnson "stated to Officer Elbaum that [he] did not have his medication." *Id.* After Johnson ended

2

the call, Elbaum took him to a jail cell. *Id.* Thirty minutes later, Parham telephoned the police station and informed the dispatcher that Johnson required his medications and asked to speak with an officer. *Id.* at 23. Elbaum returned Parham's call and discussed with her Johnson's criminal charges, need for medication, and impending transfer to the Wichita County jail. *Id.* at 26–28.

Leonard was the supervising officer on duty when Elbaum booked and questioned Johnson. *Id.* at 17. Elbaum and McDonald reported to Leonard while he was on duty. *Id.* At some point during Johnson's detention, Elbaum and McDonald met with Leonard in his office. Plaintiffs allege that the three discussed Johnson's arrest and charges. *Id.* at 17. Plaintiffs contend that both McDonald and Leonard were aware of Johnson's mental disorders because they were the supervising officers to whom Elbaum reported that night and they had reviewed Johnson's Booking Information Form. *Id.* at 17, No. 83 at 10. At some point after the meeting in Leonard's office, but before Johnson killed himself, Leonard's shift ended and he left the police station. ECF No. 71 at 21.

Johnson requested help from his jail cell shortly after he was booked, McDonald went to the cell, and Johnson asked him what charge was being made against him. *Id.* at 25–26. McDonald periodically checked on Johnson as the supervising officer on shift after Leonard left the station. *Id.* at 25–26. About an hour after Johnson arrived at the station, McDonald left the station and returned approximately two hours later. *Id.* at 26. Plaintiffs allege that no one checked on Johnson during McDonald's two hour absence, and when McDonald returned to Johnson's cell, he found Johnson dead from an apparent suicide. *Id.* at 32.

The City of Burkburnett Police Department conducted an internal investigation of Johnson's death. *Id.* As a result, Elbaum was suspended for one day for failing to monitor Johnson in accordance with Burkburnett Police Department Operating Guidelines. McDonald was

3

reprimanded for the same violation of the Operating Guidelines, and Leonard, as shift supervisor that night, received a "letter of counciling" regarding various violations of the Operating Guidelines. *Id.* at 40–42.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

In considering motions to dismiss section 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because a heightened pleading standard requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus, the issue now before the Court "is not whether [ ] plaintiff[s] will ultimately prevail but whether [they are]

entitled to offer evidence to support [their] claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

**B.   42 U.S.C. § 1983**

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied,* ___ U.S. ___, 134 S. Ct. 1935 (2014). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

A plaintiff alleging that episodic acts or omissions violated a pretrial detainee's Fourteenth Amendment rights must show "subjective deliberative indifference by the defendants." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc) (*Hare II*)). The plaintiff must demonstrate "that the official knew of and disregarded a substantial risk of serious harm." *Id.* at 420 (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Instead, "[t]o reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson*, 848 F.3d at 420 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

5

### C.  Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.' *Id.*

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court "will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate[.]'" *Whitley*, 726 F.3d at 638 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "To determine whether an official is entitled to qualified immunity, [the Court] must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of

clearly established law at the time of the incident." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III.   ANALYSIS

### A.  Fourteenth Amendment Substantive Due Process Claims

Plaintiffs allege that McDonald and Leonard are liable to them under 42 U.S.C. § 1983, for failing to protect Johnson from harm, a right guaranteed by the Fourteenth Amendment. *See* ECF 71. They contend that McDonald and Leonard were deliberately indifferent to Johnson's medical needs and failed to provide him reasonable medical care. *Id.*  In support of these allegations, Plaintiffs assert that they knew of and ignored Johnson's suicidal tendencies and serious medical needs, knew of Johnson's need to take medication for his mental health issues, knew that Johnson did not have his medication at the jail, and failed to monitor Johnson or remove items from his cell that are commonly used by inmates to commit suicide. *Id.* at 60–66.

The Due Process Clause of the Fourteenth Amendment requires that states provide pretrial detainees with basic human needs during the duration of their confinement, including medical care and protection from harm. *Alderson*, 848 F.3d at 419 (citing *Hare II*, 74 F.3d at 645). Harm includes a detainee's own known suicidal tendencies. *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). To state a claim, Plaintiffs must plead that (1) the defendants had

subjective knowledge of a substantial risk that Johnson might commit suicide and (2) responded to that risk with deliberate indifference. *Alderson*, 848 F.3d at 419 (citing *Hare II*, 74 F.3d at 650). Deliberate indifference requires that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Thompson*, 245 F.3d at 458-59 (citing *Hare II*, 74 F.3d at 643, 649-50).

The Plaintiffs urge this Court to apply the objective unreasonableness standard adopted in *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2470 (2015). The Fifth Circuit, however, recently affirmed the holding of *Hare,* which applies a "subjective deliberate indifference" standard to all failure to protect claims, regardless of whether the plaintiff is a pretrial detainee or a prisoner, and noted that the Ninth Circuit is the only circuit to have extended *Kingsley* to a pretrial detainee's failure to protect claims. *Alderson*, 848 F.3d at 419–20 & n.4. Accordingly, the Court will apply a subjective deliberate indifference standard to Plaintiffs' claims.

Plaintiffs assert that McDonald and Leonard had subjective knowledge of Johnson's suicide risk because they reviewed the Booking Information Form and thus knew of Johnson's mental health and prior suicide attempts. ECF No. 71 at 19–20. Plaintiffs also claim that they are liable in their supervisory capacities. *Alderson*, 848 F. 3d at 419 ("Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff.") (citations omitted).

Plaintiffs contend that McDonald witnessed the phone call between Parham and Johnson and "observed [Johnson] in a distraught state. *Id.* at 16. Although McDonald and Leonard argue that the department's internal investigation concluded that neither of them were actually aware of the content of Johnson's Booking Information Form and that McDonald did not overhear any

conversation between Johnson and Parham, Plaintiffs allege that Elbaum testified at his deposition that both McDonald and Leonard examined Johnson's folder, which contained his Booking Information Form, and thus allegedly knew of Johnson's mental health issues "less than two minutes after [Johnson] was incarcerated in a cell, and unmonitored, and hours before [he] died." ECF No. 71 at 19. Plaintiffs' allegations of these facts are specific, direct, non-conclusory, and substantive. Plaintiffs have sufficiently alleged facts which, if true, would establish that McDonald and Leonard had subjective knowledge that Johnson posed a substantial risk of suicide if not properly monitored. *Shepard v. Hansford Cty.*, No. 2:14-CV-147-J, 2014 WL 6662082, at *4 (N.D. Tex. Nov. 24, 2014) (*Shepard I*).

With respect to whether McDonald and Leonard acted with deliberate indifference, Plaintiffs assert that they (1) actually knew about Johnson's suicidal tendencies based on the Booking Information Form completed by Elbaum; (2) placed Johnson in an isolated cell without monitoring equipment; (3) failed to remove Johnson's drawstring from his pants and therefore allowed him access to a common item used by inmates to commit suicide; and (4) failed to monitor Johnson for a period of at least two hours, during which time he killed himself with that drawstring. ECF No. 71 at 20.

Construing the facts alleged in the light most favorable to Plaintiffs, the Complaint states that McDonald (1) was aware of facts from which he could infer that a substantial risk of serious harm to Johnson existed because of his suicidal tendencies and prior unsuccessful attempts; (2) actually drew that inference, as evidenced by his periodic checks on Johnson in his cell; and (3) responded to that risk in a manner that suggests he subjectively intended Johnson to suffer serious harm by failing to check on Johnson for over two hours or otherwise comprehensively screen Johnson for materials with which he could harm himself. *See Brown v. Strain*, 663 F.3d 245, 249

(5th Cir. 2011) (articulating three categories of evidence a plaintiff must present to establish deliberate indifference to pretrial detainee's constitutional rights). Plaintiffs rely on McDonald's Letter of Reprimand to assert that as the ranking officer in charge of the jail after Leonard left the police station, McDonald was responsible to ensure that the Department's policies on observing detainees were being followed. ECF No. 71 at 41. These factual allegations, taken as true at this point, are sufficient to establish that McDonald deprived Johnson of his Fourteenth Amendment rights by acting with deliberate indifference to the substantial risk that Johnson would commit suicide while detained in the jail. *See Shepard v. Hansford Cty.*, 110 F. Supp. 3d 696, 711 (N.D. Tex. 2015) (*Shepard II*) (officer's failure to perform face-to-face observations of detainee placed on suicide watch every fifteen minutes was deliberately indifferent to detainee's right to protection from risk of suicide); *Duran v. City of Eagle Pass,* No. SA–10–CA–0504, 2010 WL 3928540, at *6 (W.D. Tex. Oct. 5, 2010) (allegations satisfied subjective deliberate indifference prong where jail officials were aware that detainee was suicidal, but left him unmonitored in detention cell with objects that could be used for self-asphyxiation). Thus, Plaintiffs have sufficiently stated Fourteenth Amendment claims upon which relief can be granted against McDonald, and the motion to dismiss him from the case should be denied.

With respect to whether Leonard acted with deliberate indifference in his own capacity and not as a supervisor, Plaintiffs allege that Leonard also was aware of the facts that Johnson had suicidal tendencies and took no steps to protect him while he was in custody. However, as argued by the Defendants, Leonard stands in a different position because he was not on duty or present at the police station when Johnson committed suicide. ECF No. 83 at 17. The Court cannot reasonably find that Leonard actually drew the inference that Johnson would harm himself and responded to that risk in a manner that suggests he subjectively intended Johnson to suffer serious

harm. He simply left the station once his shift had ended, leaving McDonald as the senior officer in charge of the jail.

In addition to being liable for their own acts of deliberate indifference that causes harm, supervisory officials are responsible for implementing unconstitutional policies that causally result in injury to the plaintiff. *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). An official not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under § 1983 if: "1) the [supervisor] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Cozzo v. Tangipahoa Par. Council–President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002) (citation omitted). Supervisory liability can also be established without direct participation in the alleged events "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotation marks omitted).

Plaintiffs offer Chief Stahr's "Letter of Counciling" to show that Leonard was deliberately indifferent to Johnson. ECF No. 71 at 42. The letter states that Leonard was responsible to make sure officers under his supervision were aware of any actions that needed to be taken and that he was responsible for clarifying matters when needed. *Id.* However, supervisory officials like Leonard cannot be held responsible under § 1983 on a theory of respondeat superior or simply because a subordinate allegedly violated a detainee's constitutional rights. *Alton*, 168 F.3d at 201. In this case, Plaintiffs have not sufficiently alleged that Leonard personally failed to protect Johnson or that he personally directed Elbaum and McDonald in their detention of Johnson.

11

Further, Plaintiffs have not alleged that Johnson was deprived of his constitutional rights as a direct result of any order, training requirement, or other policy implemented, or not implemented, by Leonard in his position as a supervisor. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991). Based on the facts alleged in the Amended Complaint, the undersigned cannot infer that Leonard acted with deliberate indifference toward Johnson. Accordingly, Plaintiffs' claims against Leonard should be dismissed.

### B. Qualified Immunity

By sufficiently alleging McDonald's subjective deliberate indifference to Johnson's Fourteenth Amendment rights as a pretrial detainee, Plaintiffs "have cleared the first hurdle" in overcoming his qualified immunity defense. *Jacobs*, 228 F.3d at 393. The Court must next determine whether Plaintiffs have sufficiently pleaded that McDonald's actions were objectively unreasonable in light of clearly established law at the time of Johnson's suicide. *Id.*

McDonald argues there was no clearly established precedent that would have put him on notice that his actions were clearly unlawful. ECF No. 83 at 20–22. However, the Fifth Circuit has found that the law is clearly established that a prison officer has a duty to not be deliberately indifferent toward an inmate's risk of suicide and must respond to that risk in an objectively reasonable way. *See Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) ("[W]hile the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be."). In *Arenas v. Calhoun*, the court clarified that the measures taken to address known suicide risks must be objectively reasonable and do not themselves have to have been clearly established in case law. No. SA-16-cv-01203-XR, 2017 WL 1052618, at *6 (W.D. Tex. Mar. 20, 2017).

The qualified immunity defense requires courts to determine whether a defendant acted reasonably at the time of the alleged constitutional violation, and "[t]his determination is complicated when, as here, the deliberate indifference standard must be reconciled with the second prong's objective reasonableness standard." *Hinojosa v. Livingston*, 807 F.3d 657, 672 (5th Cir. 2015) (citation omitted). "The reasonableness analysis must be different from the deliberate-indifference analysis, because '[o]therwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine.'" *Id.* (citations omitted).

In order to overcome McDonald's defense of qualified immunity, Plaintiffs must sufficiently allege that McDonald's actions "fall[] outside the realm of that which could be characterized as being objectively reasonable in light of the duty to not act with subjective deliberate indifference to a known substantial risk of suicide." *Id.* at 397-98. Plaintiffs have stated sufficient facts to allow the Court to draw the reasonable inference that McDonald may be liable for the harm alleged and thus defeat the defense of qualified immunity at this stage of the proceedings. Plaintiffs have alleged that no reasonable officer in McDonald's position could have believed that leaving Johnson alone for over two hours without supervision, monitoring, or medication, and with the means to harm himself, was lawful. They have asserted that any reasonable officer would have at least made sure that minimally adequate preventative measures or precautions were taken to protect Johnson from his known suicidal tendencies, in light of the officer's duty to not be deliberately indifferent. *Jacobs*, 228 F.3d at 396-98.

The undersigned finds that the Plaintiffs have adequately alleged that McDonald's "actions were objectively unreasonable in light of the law that was clearly established at the time of the

actions complained of," and thus qualified immunity does not warrant dismissal at this stage. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M.G. Lynn **DENY in part and GRANT in part** Defendants McDonald's and Leonard's Motion to Dismiss (ECF No. 83), and dismiss Plaintiffs' claims against Defendant Leonard.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed May 22, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE